## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Total Energy Concepts, Inc., *a North Dakota Corporation*; and Damian R. Smith, *an individual*,

> Interpleader Claimants, Cross-Claimants, Third-Party Plaintiffs, and Crossclaim Defendants,

v.

Total Energy Concepts, Inc., *a Nevada Corporation*,

> Interpleader Claimant, Cross-Claimant, and Crossclaim Defendant,

and

Smartcool Systems, Inc.,

> Third-Party Defendant.

File No. 20-cv-2540 (ECT/LIB)

**OPINION AND ORDER**

Anthony Anderson, Jacqueline S. Anderson, and Mark R. Hanson, Nilles Law Firm, Fargo, ND, for Damian R. Smith and Total Energy Concepts, Inc., *a North Dakota Corporation*.

James. M. Susag, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, MN, for Smartcool Systems, Inc. and Total Energy Concepts, Inc., *a Nevada Corporation*.

This interpleader action concerns competing claims to funds held in two U.S. Bank accounts. Two of the interpleader claimants—Total Energy Concepts, Inc., a North Dakota Corporation ("TEC North Dakota") and its president, Damian Smith—have asserted cross-

and third-party claims against an adverse claimant, Total Energy Concepts, Inc., a Nevada Corporation ("TEC Nevada"), and its parent company, SmartCool Systems, Inc. ("SmartCool").   TEC Nevada and SmartCool have filed a motion to dismiss those claims for improper venue and for summary judgment on the interpleader action.   TEC Nevada and SmartCool's motion will be granted.

I[1]

Damian Smith is TEC North Dakota's President and its sole shareholder.   Smith Aff. ¶ 1 [ECF No. 49].   He co-founded the company in 2007. *Id.* ¶ 2.   TEC North Dakota "sold energy efficiency products and services for various industrial and commercial applications, such as refrigeration, HVAC, lighting, and electrical grounding," and its "product offerings were a mix of [its] own proprietary technology and products licensed from other entities."   ECF No. 15 ¶ 32.   In 2007 or 2008, TEC North Dakota began distributing products manufactured by SmartCool.   Smith Aff. ¶ 2.   SmartCool is a publicly traded Canadian corporation that is located principally in the province of British Columbia.   ECF No. 15 ¶ 28; *see* ECF Nos. 49-5–49-8.

In 2017, SmartCool's President, Theodore Konyi, contacted Smith about merging TEC North Dakota and SmartCool.   Smith Aff. ¶¶ 2–3.   Konyi and Smith negotiated for several months.   *See* ECF Nos. 49-1–49-4.   In February 2018, they executed a Term Sheet Agreement.   ECF No. 42-1 at 2–6.   The Term Sheet Agreement's stated purpose was "to set out the terms by which all assets of [TEC North Dakota] [would] be acquired by

---

[1]      Unless noted otherwise, these facts are either undisputed or construed in the light most favorable to Smith and TEC North Dakota.

[SmartCool] in exchange for Common Shares of SmartCool." *Id.* § 1(1).  The Term Sheet Agreement contemplated that, in an eventual merger, TEC North Dakota's assets and liabilities would transfer to SmartCool and, in exchange, Smith would receive SmartCool shares and $150,000 in cash.  *Id.* § 2(1)–(2).  TEC North Dakota would "dissolve[]" as a North Dakota corporation and survive as a SmartCool subsidiary.  *Id.* § 2(1).  Smith would stay on as President and CEO of the SmartCool subsidiary, and SmartCool would "furnish working capital and resources" to aid in its expansion.  *Id.* §§ 1(7), 2(4).  The Term Sheet Agreement was provisional.  It was subject to due diligence and served only as "the basic terms" for a final merger agreement to be executed at closing.  *Id.* §§ 2(1), 3(1)–(3).

Meanwhile, Konyi organized a Nevada corporation—also called "Total Energy Concepts, Inc." (TEC Nevada)—to serve as the new SmartCool subsidiary.  ECF No. 42-1 at 8–15.  In June 2018, the parties executed an Amendment of Term Sheet Agreement, which reflected their agreement as to the number of common shares to be exchanged, extended the date of closing, and amended the "effective date" of the Term Sheet Agreement to April 1, 2018.  *Id.* at 17–18.

The deal closed in August or September 2018, when SmartCool, TEC Nevada, Damian Smith, and TEC North Dakota executed a Merger Agreement.  ECF No. 42-1 at 22–93 ("Agmt."); *see also* Smith Aff. ¶ 8.  Under the Merger Agreement, the parties would file the necessary paperwork with the Nevada and North Dakota secretaries of state to effectively merge TEC North Dakota into TEC Nevada.  Agmt. § 2.1.  The newly formed TEC Nevada would acquire TEC North Dakota, and TEC North Dakota's "separate corporate existence" would "cease."  *Id.* §§ 2.1, 2.2.  SmartCool had five business days

3

from closing to issue and deliver shareholder certificates to Smith, and it had one year to pay Smith $150,000 in "Acquisition Cash." *Id.* §§ 2.5, 2.6. The Merger Agreement also set forth certain "conditions precedent" to either party's obligation "to complete the transactions contemplated by" the Merger Agreement, which were to be satisfied "at or before" closing. *Id.* §§ 7.1, 8.1. Finally, the Merger Agreement included an integration clause explaining that it was "the entire agreement among the Parties" and "expressly supersede[d] and terminate[d] all prior offers, arrangements and understandings, both written and oral, express or implied, with respect thereto, including the Term Sheet Agreement." *Id.* § 13.7.

After closing, the parties took steps to effect TEC North Dakota's dissolution and merger into TEC Nevada. Smith, as TEC North Dakota's sole shareholder, approved the merger by executing a Written Action by Shareholders and Directors. Konyi Decl. ¶ 7 [ECF No. 42]; ECF No. 42-1 at 20. The Written Action acknowledged that TEC North Dakota "would dissolve its corporate status in the state of [North Dakota] and become a Corporation in the state of Nevada, operating as a wholly owned subsidiary of [SmartCool]." *Id.* On August 22, the parties filed Articles of Merger with the Nevada Secretary of State. ECF No. 42-1 at 95–100. The Parties also executed and filed a Plan of Merger confirming that, in accordance with the Merger Agreement, TEC North Dakota would merge into TEC Nevada. *Id.* at 101–04. Under that Plan, the merger would become "effective" once the necessary paperwork was filed with the Nevada and North Dakota secretaries of state. *Id.* § 2. Finally, the parties executed Articles of Merger and filed them with the North Dakota Secretary of State. *Id.* at 110–11. On December 7, the North Dakota

Secretary of State issued a Certificate of Merger certifying that TEC North Dakota had merged into TEC Nevada.  *Id.* at 115–16.

Smith grew dissatisfied post-merger.  SmartCool had not paid him $150,000 or supported TEC Nevada with capital and resources as promised.  Smith Aff. ¶¶ 9, 15.c. Smith "began to see signs that something was amiss with SmartCool regarding certain financial management and compliance issues."  *Id.* ¶ 9.  In September 2018, for example, the British Columbia Securities Commission issued a Cease Trade Order on SmartCool's stock for its failure to file certain mandatory financial disclosures.  ECF No. 49-5.  Konyi also made unexpected demands for payment.  Smith Aff. ¶ 13; ECF No. 49-9.  Eventually, Smith concluded that Konyi had "most likely been dishonest" about "his abilities in financial management, fundraising, and securities issues."  Smith Aff. ¶ 15.  Smith also believed Konyi had "seriously misrepresented its financial situation during the due diligence period," and that SmartCool "was never going to deliver the $150,000.00 cash payment."  *Id.*

In May 2019, Smith decided the Merger Agreement was "fraudulent and unenforceable," and that TEC North Dakota "had never actually merged" into TEC Nevada.  Smith Aff. ¶ 16.  To "safeguard" TEC North Dakota's remaining funds, Smith opened two corporate accounts at U.S. Bank in Brainerd, Minnesota ("Accounts").  Smith Aff. ¶¶ 17–19; *see* Konyi Decl. ¶ 14.  The Accounts were titled "Total Energy Concepts Inc" and Smith designated himself as the "Account Holder."  ECF No. 49-12.  He opened the Accounts using TEC North Dakota's Tax ID number.  Smith Aff. ¶¶ 19–20. Meanwhile, he still hoped to "get [the] two businesses back on track."  *Id.* ¶ 22.  Smith

authorized Konyi to access the Accounts, "with the hope of restoring some good faith between SmartCool and [TEC North Dakota], and based on [an] incorrect understanding that Konyi would only be able to view account balances, and that [Smith] would remain the only person with the authority to write checks and withdraw funds." *Id.* ¶¶ 21–24.

In May 2020, Smith rescinded Konyi's access to the Accounts.  Smith Aff. ¶ 26; Konyi Decl. ¶¶ 16–18.  Konyi responded by calling a meeting of SmartCool's board, at which Smith was terminated from TEC Nevada and removed as a director and officer of SmartCool.  Konyi Decl. ¶ 21; ECF No. 42-1 at 121–25.  Smith and Konyi each claimed ownership of the Accounts, prompting U.S. Bank to freeze them.  Interpleader Compl. ¶¶ 11–16 [ECF No. 1].

U.S. Bank filed this interpleader action to establish ownership in the Accounts as between Smith and TEC North Dakota, on one hand, and TEC Nevada, on the other.  *Id.* Smith and TEC North Dakota asserted crossclaims against TEC Nevada and third-party claims against SmartCool.  ECF No. 15.  Together, Smith and TEC North Dakota's claims are for breach of contract, fraud, rescission, and a declaratory judgment.  In essence, Smith and TEC North Dakota allege that SmartCool fraudulently induced the merger by misrepresenting its "financial position" and that certain conditions precedent to the Merger Agreement—namely, the $150,000 cash payment—went unfulfilled.  They seek rescission of the Merger Agreement or damages.  *Id.* ¶¶ 49–62.  TEC Nevada crossclaimed for a judgment "declaring that it is the sole and exclusive owner and controller" of the Accounts and any funds held in them and that Smith is "singularly and solely liable for any costs and attorneys' fees incurred by U.S. Bank and [TEC Nevada]."  ECF No. 18 ¶¶ 42–47.

After deducting its costs and attorneys' fees, and as stipulated by the parties, U.S. Bank deposited the net balance of $83,246.46 in the Court registry and was dismissed from this action.  ECF Nos. 27, 29, 31.  SmartCool and TEC Nevada have filed motions for summary judgment and for a protective order.  ECF Nos. 32, 34.  SmartCool and TEC Nevada argue that they are entitled to summary judgment on the account-ownership issue, and that Smith and TEC North Dakota's claims must be dismissed for improper venue because the parties agreed to litigate any disputes arising from the Merger Agreement in British Columbia.  Mem. in Supp. at 8–14 [ECF No. 40].

## II

There is subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332(a). U.S. Bank filed this action under Rule 22 of the Federal Rules of Civil Procedure and alleged diversity of citizenship under § 1332.  *See generally* Interpleader Compl.  "[T]his means that the amount in controversy must exceed $75,000, exclusive of interest and costs, and that it is [U.S. Bank's] citizenship that must be diverse from that of the claimants."  7 Mary Kay Kane, *Federal Practice and Procedure* § 1703 (3d ed. Apr. 2021 Update).  Here, there is more than $75,000 in controversy.  ECF No. 31.  As a national bank, U.S. Bank is a citizen of Ohio, where its main office is located.  Interpleader Compl. ¶ 1; *see Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006).  Claimants Damian Smith, TEC North Dakota, and TEC Nevada are not Ohio citizens and thus are completely diverse from U.S. Bank.  Smith is a Minnesota citizen.  Interpleader Compl. ¶ 4; ECF No. 15 ¶ 5.  TEC North Dakota and TEC Nevada were incorporated under the law of each of those states, ECF No. 42-1 at 8–15, 115–16, and though there is some uncertainty about the location of these

entities' principal places of business, the record gives no reason to believe that either entity maintains (or ever maintained) a principal place of business in Ohio.  There is supplemental jurisdiction over the crossclaims and third-party claims because exercising jurisdiction over them is not "inconsistent with the jurisdictional requirements of section 1332."  28 U.S.C. § 1367(b).

III

TEC Nevada and SmartCool argue that Smith and TEC North Dakota's cross- and third-party claims must be dismissed under the Merger Agreement's venue selection clause.  Mem. in Supp. at 12–14.  In that clause, the Parties agreed "that any action, suit or proceeding arising out of or relating to [the Merger Agreement] or the transactions contemplated [t]hereby" would "be brought in a suitable court located in the Province of British Columbia" and that "each Party irrevocably submits to the exclusive jurisdiction of those courts."  Agmt. § 13.5.

SmartCool and TEC Nevada's efforts to enforce the venue selection clause will be construed as a motion to dismiss for improper venue under Rule 12(b)(3).  SmartCool and TEC Nevada preserved the defense by raising it in their joint answer to the cross- and third-party claims, ECF No. 20 ¶¶ 6–8, 27–34, 36–39, 41–42, and because neither party omitted the defense from a previous Rule 12 motion.  Fed. R. Civ. P. 12(g)(2), (h)(1).  Thus, the venue selection clause's enforceability may be considered though raised in a motion for summary judgment.  *Rogen v. Memry Corp.*, 886 F. Supp. 393, 396–97 (S.D.N.Y. 1995) (collecting cases); *cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588, 596–97 (1991) (reversing denial of summary-judgment motion that sought to enforce forum

8

selection clause); *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997) (defendant preserved improper venue as part of summary-judgment theory by raising venue defense in its answer).

A "clear majority" of circuit courts hold that federal law governs the enforceability of a forum-selection clause in diversity cases because the question is procedural. *See* 14D Freer, *Federal Practice and Procedure* § 3803.1 (collecting cases). In at least one case, the Eight Circuit has agreed. *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009) ("[E]nforcement, or not, of [a] contractual forum selection clause [is] a federal court procedural matter governed by federal law."). "Both before and after *Fru-Con*," however, "Eighth Circuit panels have treated [this] *Erie* question as an open one." *U.S. Bank Nat'l Ass'n v. Silicon Valley Fence Sales, Inc.*, No. 20-cv-2291 (ECT/ECW), 2021 WL 37686, at *5 & n.7 (D. Minn. Jan. 5, 2021) (collecting cases). In any case, no "definitive position" on the issue is necessary here because the Minnesota Supreme Court "follow[s] the federal standard announced by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and neither party argues that the application of one or another body of law would materially affect the outcome." *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (internal citations omitted); *see Hausenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889–91 (Minn. 1982); *Cell v. Moore & Schley Secs. Corp.*, 449 N.W.2d 144, 149 (Minn. 1989).

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 973 (8th Cir. 2012) (citation omitted). "Where,

as here, the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain." *Servewell*, 439 F.3d at 789 (quoting *Bremen*, 407 U.S. at 17).   "Courts recognize three grounds for invalidating a forum selection clause: (1) if the clause is the product of fraud or overreach; (2) if the party would be deprived of his day in court if the clause is enforced; and (3) if enforcing the clause would contravene the public policy of the forum in which the suit is brought."  *St. Jude Med. S.C., Inc. v. Suchomel*, No. 19-cv-2400 (JRT/BRT), 2020 WL 1853653, at *4 (D. Minn. Apr. 13, 2020) (citing *Shute*, 499 U.S. at 593–95).

In their brief, Smith and TEC North Dakota do not contest the validity of the venue selection clause, which, if enforceable, plainly applies to their claims; they advance three reasons why it should not be *enforced*.  Thus, Smith and TEC North Dakota bear a "heavy burden" to avoid enforcement.

First, Smith and TEC North Dakota argue that litigating their claims in British Columbia would be "seriously inconvenient."  Mem. in Opp'n at 29–30 [ECF No. 47]. "[F]or the chosen forum to be 'seriously inconvenient,' one party would have to be 'effectively deprived of a meaningful day in court.'"  *Hausentstein*, 320 N.W.2d at 890 (quoting *Bremen*, 407 U.S. at 19).  To meet this standard, Smith and TEC North Dakota point out that a cease-trade order against SmartCool "has only been partially lifted, so that SmartCool may raise funds in order to pay 'past due audit fees.'"  Mem. in Opp'n at 30; *see* ECF Nos. 49-5–49-8.  They posit that litigation in "any other venue would be against an empty, assetless shell," and that it "seems likely" Smith would lose the chance to recover damages.  Mem. in Opp'n at 30.  Smith and TEC North Dakota's suspicion that SmartCool

is "assetless" seems conjectural.  Regardless, assuming the suspicion's truth does not satisfy Smith and TEC North Dakota's heavy burden.  If SmartCool is assetless, Smith and TEC North Dakota do not explain how litigation in this District, instead of British Columbia, solves that problem.  They do not suggest, for instance, that tribunals there are somehow inadequate.[2]  And while seeking relief in British Columbia may cause added inconvenience or expense, that is not enough to avoid enforcement.  *See, e.g.*, *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 727 (8th Cir. 2001); *C.H. Robinson Worldwide, Inc. v. Rodriguez*, 12-cv-264 (DSD/SER), 2012 WL 4856245, at \*5 (D. Minn. Oct. 12, 2012).

Smith and TEC North Dakota also argue that the Merger Agreement was adhesive.  In their view, "SmartCool's repeated promises of substantial funding and growth show the vast disparity in bargaining power and lack of meaningful negotiation between the parties."  Mem. in Opp'n at 31.  Yet this was far from a "take-it-or-leave-it" agreement.  *See Hausenstein*, 320 N.W.2d at 891.  Smith and TEC North Dakota have shown neither "a great disparity in bargaining power" nor "that there was no opportunity for negotiation."  *Id.*  Quite the opposite.  Smith and TEC North Dakota's own evidence shows they transacted with SmartCool for a decade before the merger.  Smith Aff. ¶ 2.  Smith, on TEC North Dakota's behalf, negotiated at arms'-length with Konyi for at least several months.  When they did agree to merge, they did so provisionally, followed by a period of due

---

[2]     At the hearing, Smith and TEC North Dakota argued that litigation in this forum is superior because the interpleader funds are here.  For reasons discussed below, however, Smith and TEC North Dakota have not created a genuine fact dispute that they are entitled to those funds.

diligence.   Smith and TEC North Dakota received advice from legal and finance professionals throughout.[3]   *See* ECF Nos. 49-1–49-4; Agmt. § 13.4.   Under these circumstances, the Merger Agreement cannot reasonably be called "adhesive."

Last, Smith and TEC North Dakota argue that a change of venue would be "unreasonable and unfair."  Mem. in Opp'n at 31–32.  In their view, "[t]he issue of whether or not the merger was consummated is tightly bound up with the question of the ownership and control of the [Accounts]," and adjudication here "permit[s] a speedier, more efficient resolution."   *Id.* at 31–32.  They don't cite caselaw or other authority to support this argument.   Sometimes, courts have found that forcing a party to litigate the same or substantially similar claims separately in multiple forums would make enforcement "unreasonable."  *See, e.g.*, *Pressdough of Bismarck, LLC v. A & W Rests., Inc.*, 587 F. Supp. 2d 1079, 1086 (D.N.D. 2008).   Here, however, the interpleader action is both narrow—it concerns only the Parties' entitlement to funds in the Accounts—and collateral—it is not so bound up with Smith and TEC North Dakota's claims as to be inseverable.  Smith and TEC North Dakota have not explained how an independent ruling on the interpleader action would impede their ability to pursue fraud and contract claims in a separate lawsuit or risk inconsistent rulings.  Thus, the risk of multiple lawsuits is not

---

[3]     Smith and TEC North Dakota argued at the hearing that the venue selection clause is unenforceable because the Merger Agreement was procured by fraud.  They have not claimed or adduced evidence, however, that the venue selection clause itself was procured by fraud.  *Marano Enters. of Kan. v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757 (8th Cir. 2001) ("A 'forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.'") (citation omitted) (emphasis in original); *accord M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999).

a sufficient ground to set aside the venue selection clause here. *See Hitachi Cap. Am. Corp. v. McCollum*, No. 19-cv-2747 (SRN/HB), 2020 WL 3977229, at *10 (D. Minn. July 14, 2020); *Lyon Fin. Servs., Inc. v. Nowobilska Med. Ctr., Ltd.*, No. 05-cv-1820 (DWF/SRN), 2005 WL 3526682, at *7 (D. Minn. Dec. 22, 2005); *Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 910–11 (Minn. Ct. App. 2002).

In sum, Smith and TEC North Dakota entered an arms'-length business relationship with a company in British Columbia, and they agreed to resolve any claims arising from the Merger Agreement there. Enforcing the venue selection clause would not be unfair or unreasonable. Smith and TEC North Dakota's cross- and third-party claims will be dismissed without prejudice.

IV

TEC Nevada and SmartCool have moved for summary judgment as to the interpleader complaint; if granted, this motion would establish their rights in the Accounts and dispense of this lawsuit entirely.[4] After the stakeholder is dismissed, "[t]he second stage of interpleader involves the determination of the respective rights of the claimants to the stake" and, "[a]bsent special circumstances, this second phases will proceed like any other action." 7 Kane, *Federal Practice and Procedure* § 1714. Thus, summary judgment

---

[4]   It's conceivable that the Merger Agreement's venue selection clause could be interpreted to encompass the interpleader component of this lawsuit. As in other contexts, however, "consent by the claimant or a failure to make timely objection will constitute a waiver of the right to raise the issue." 7 Kane, *Federal Practice and Procedure* § 1712. Neither side has sought enforcement of the venue selection clause with respect to the interpleader action. Regardless, no Party preserved this defense by raising it in a responsive pleading. *See* ECF Nos. 18, 20.

is warranted if SmartCool and TEC Nevada "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Aon Corp. v. Hohlweck*, 223 F. Supp. 2d 510, 514, 517 (S.D.N.Y. 2002). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255 (citation omitted).

In resolving claims between adverse claimants, "a district court must normally determine the priority of claims in an interpleader action as they existed at the time the action was initiated." *Texaco, Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997). An inventory of uncontested evidence shows why there is no genuine dispute that TEC Nevada is entitled to the interpleader funds. Konyi organized TEC Nevada as a legal entity by filing the necessary paperwork with the Nevada Secretary of State. ECF No. 42-1 at 8–15. Smith and TEC North Dakota then entered a Merger Agreement that caused TEC North Dakota to "merge[] with and into" TEC Nevada and caused TEC North Dakota's "corporate existence" to "cease." Agmt. § 2.2(a); *see also* Smith Aff. ¶¶ 8–9. Smith and TEC North Dakota agreed that TEC North Dakota's "property, rights and privileges, immunities, powers and franchises[,] and all and every other interest" it had, would become "effectually the property of [TEC Nevada]." Agmt. § 2.2(c). The parties then took steps necessary to accomplish a lawful merger, including by filing the necessary paperwork with

the North Dakota Secretary of State.  ECF No. 42-1 at 95–100, 110–11.  In December 2019,

the North Dakota Secretary of State certified that TEC North Dakota had merged into TEC

Nevada.  *Id.* at 115–16.  Smith became an employee of TEC Nevada.  *See* Agmt.

§ 10.1(b)–(c).

Against this evidence, Smith and TEC North Dakota have not identified a genuine

dispute of material fact.  They argue that TEC Nevada and SmartCool's motion for

summary judgment "must be denied with respect to the issue of the ownership and control

of the [] Accounts solely due to the text of the signature card to the [] Accounts, which

show Damian Smith as the 'Account Holder.'"  Mem. in Opp'n at 17; *see* ECF No. 49-12.

But the fact that Smith opened the Accounts (while employed by TEC Nevada) would be

material only if he asserted some legitimate entitlement to the deposited funds.  Smith does

not assert, for example, that he commingled personal funds or money from other business

ventures in the Accounts.  Instead, Smith offers only a belief that the Merger Agreement

was void for fraud, that TEC North Dakota retained its status as an independent entity, and

that the "remaining funds held by [TEC North Dakota]" that he deposited in the Accounts

therefore belonged to TEC North Dakota—not TEC Nevada.  Smith Aff. ¶¶ 16–21.  As

discussed already, the undisputed evidence shows that TEC North Dakota dissolved and

survived as SmartCool's wholly owned subsidiary, TEC Nevada.[5]  The upshot is that

---

[5]      As other evidence that TEC North Dakota "remained an independent legal entity"
after the merger, Smith and TEC North Dakota point to invoices that SmartCool sent them
for "Corporation Monthly Management Fees" and Smith's continued payment of bills for
the surviving entity.  Mem. in Opp'n at 27–28.  But that evidence all refers to the surviving
entity by the name that TEC Nevada and (the now-dissolved) TEC North Dakota share:
Total Energy Concepts, Inc.  *See* ECF Nos. 49-10, 49-11, 49-14.

Smith's belief that TEC North Dakota survived and that he deposited funds belonging to TEC North Dakota lacks any support in the record.

Smith and TEC North Dakota also argue that there is a genuine fact dispute over whether the Merger Agreement is rescindable for fraud, so there is also a genuine dispute as to the owner of the funds in the Accounts. This argument conflates Smith and TEC North Dakota's claims—fraud and breach of contract—with a potential remedy. Rescission of contract is an elective remedy that, in certain cases, may be sought as an alternative to damages. *See, e.g.*, *N.W. State Bank, Osseo v. Foss*, 197 N.W.2d 662, 665–66 (Minn. 1972). To be sure, were Smith and TEC North Dakota to prevail on their fraudulent inducement theory, rescission of the Merger Agreement might be one among several possible remedies. But account ownership is a separate question. No authority is cited suggesting that the possibility of a Canadian court ordering rescission some months or years from now means that Smith or TEC North Dakota owned the Accounts' funds, either when the Accounts were opened, when this suit was filed, or at any point in between.

Smith and TEC North Dakota advance two procedural arguments in opposition to summary judgment. First, they argue that summary judgment should be denied under Federal Rule of Civil Procedure 56(d) because they cannot present facts essential to justifying their opposition to the motion for summary judgment. Mem. in Opp'n at 11–12. Though they have served discovery on SmartCool and TEC Nevada, SmartCool and TEC Nevada have resisted that discovery and instead moved for a protective order pending resolution of their summary-judgment motion. *See* ECF No. 37. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to

16

justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)–(3). "[T]o obtain a Rule 56(d) continuance, the nonmovant 'must file an affidavit affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Jackson v. Riebold*, 815 F.3d 1114, 1121 (8th Cir. 2016). Smith and TEC North Dakota have complied with Rule 56(d)'s procedural requirements by filing an affidavit and attaching the requests showing the discovery they have sought but not obtained. ECF Nos. 48, 46-1, 46-2, 46-3. But Smith and TEC North Dakota have not shown that the discovery they seek would enable them to identify a genuine issue of material fact. The interrogatories are probative to "allegations that SmartCool misrepresented its financial condition" and Smith's "claims for breach of contract and fraud." ECF No. 48 ¶¶ 4–5. The discovery requests are not tailored to discovering unavailable evidence concerning entitlement to the interpleaded funds. Second, Smith and TEC North Dakota also argue that summary judgment should be denied for SmartCool and TEC Nevada's failure to adhere to Local Rule 7.1 and the pretrial scheduling order, which incorporated it. Mem. in Opp'n at 10–11. Local Rule 7.1(c)(1) directs litigants to file dispositive motions "simultaneously" with a notice of hearing, a memorandum of law, supporting evidence, a meet-and-confer statement, and a proposed order. SmartCool and TEC Nevada filed their motion and notice of hearing and waited several weeks to file their memorandum and supporting documents. ECF Nos. 34–35, 40. Regardless, the Parties briefed the motion in the normal course, and no prejudice resulted.

It would therefore be a mistake to deny SmartCool and TEC Nevada's motion on this basis.[6]

## ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS ORDERED THAT**:

1.      Defendant Total Energy Concepts, Inc., a Nevada Corporation and Third-Party Defendant SmartCool Systems, Inc.'s Motion for Summary Judgment [ECF No. 34] is **GRANTED** as follows:

   a.  The motion is **GRANTED** insofar as it seeks dismissal of Damian R. Smith and Total Energy, Inc., a North Dakota Corporation's Crossclaim and Third-Party Complaint [ECF No. 15].   Those claims are **DISMISSED** without prejudice.

   b.  The motion is **GRANTED** insofar as it seeks summary judgment on the interpleader action.  The Clerk of Court is directed to pay Defendant Total Energy Concepts Inc., a Nevada Corporation the interpleader funds that were deposited in the court registry [ECF No. 31].

2.      Defendant Total Energy Concepts Inc., a Nevada Corporation's Crossclaim for a Declaratory Judgment [ECF No. 18] is **DISMISSED** as moot.

---

[6]      TEC Nevada crossclaimed for a declaratory judgment as to its ownership interest in the Accounts.  ECF No. 18 ¶ 46.  This claim is duplicative of the interpleader relief and will therefore be dismissed as moot.  *See, e.g.*, *White Marlin Open, Inc. v. Heasley*, No. RDB-16-3105, 2017 WL 467733, at *7 (D. Md. Feb. 3, 2017) (dismissing without prejudice claims for declaratory relief that were duplicative of relief sought in underlying interpleader complaint).

3.      Defendant Total Energy Concepts, Inc., a Nevada Corporation and Third-Party Defendant SmartCool Systems, Inc.'s Motion for a Protective Order [ECF No. 32] is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 6, 2021                         s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court